(April 20, 2017)

■ BROOKE BIONDI, Respondent, v DAVID BEHRMAN, D.M.D., et al., Appellants, et al., Defendants. [53 NYS3d 265]—

Order, Supreme Court, New York County (Douglas E. McKeon, J.), entered on or about October 15, 2015, which denied defendants-appellants' motion for summary judgment dismissing the complaint, and granted plaintiff's cross motion to amend the bill of particulars, reversed, on the law, without costs, the motion granted, and the cross motion denied as academic. The Clerk is directed to enter judgment in favor of defendants-appellants.

Plaintiff was born with a congenital condition, CHARGE syndrome, that involves a constellation of symptoms, including ear abnormality. She had preexisting bilateral hearing loss and a significant underbite with an underdeveloped and asymmetric jaw, resulting in the nonalignment of her teeth with the midline of her face. Plaintiff and her family consulted with Dr. Behrman, an oral and maxillofacial surgeon, concerning a plan to correct the skeletal deformity, and plaintiff consented to the elective double jaw orthognathic surgery. In her complaint and

bill of particulars, plaintiff alleges that, as a result of the surgery, she suffered further hearing loss, numbness of lips, chin and lower facial areas, as well as problems with her midline bite and posterior occlusion.

Defendants met their prima facie burden in their summary judgment motion with plaintiff's medical records, and the opinions of Dr. Behrman and two experts, who addressed all theories of negligence alleged in the bill of particulars. In particular, their orthodontic expert opined that any problems with plaintiff's midline misalignment and posterior occlusion did not result from the surgery and, in any event, the 1 mm mandible slide was de minimis and within the standard of care. Defendants' expert otolaryngologist opined that, while plaintiff may have suffered additional hearing loss, there was no medical explanation therefor and that loss of hearing was not a risk of orthognathic surgery. Dr. Behrman opined that his presurgical disclosure of the risks and benefits of the procedure, including the possibility of sensory deficits, comported with the standard of care and that hearing loss was not a foreseeable consequence of the procedure, and that the infection that led to removal of hardware had no functional consequence.

Once the defendants met their burden for summary judgment, plaintiff was obligated to rebut defendant's prima facie showing with medical evidence demonstrating that the defendants departed from accepted medical practice (*Scalisi v Oberlander*, 96 AD3d 106, 120 [1st Dept 2012]). Here, plaintiff failed to address the opinions of defendants' experts or defendants' prima facie showing that the result from the complicated, extensive double jaw surgery was anything but a reasonable result. Thus, there was no basis to preclude a grant of summary judgment in favor of defendants (*see Fernandez v Moskowitz*, 85 AD3d 566, 567-568 [1st Dept 2011]). Instead, plaintiff proffered a new theory, based on the report of an expert otolaryngologist, who opined that Dr. Behrman had failed to take into account plaintiff's primary immune deficiency in planning the surgery, that he should have initially consulted with an immunologist who would have performed testing before surgery, and that he failed to refer plaintiff after surgery to an ENT doctor, who would have consulted with an immunologist. Plaintiff's expert asserted that these failures led to the development of an infection, which caused plaintiff's hearing loss, numbness, and teeth misalignment.

It is axiomatic that a plaintiff cannot defeat a summary judgment motion that made out a prima facie case by merely asserting, without more, a new theory of liability for the first

time in the opposition papers (*see Abalola v Flower Hosp.*, 44 AD3d 522, 522 [1st Dept 2007]). Since plaintiff's opposition papers were insufficient absent this new theory of recovery, defendants' summary judgment motion should have been granted (*see Ostrov v Rozbruch*, 91 AD3d 147, 154 [1st Dept 2012]).

Furthermore, plaintiff's cross motion for leave to amend should have been denied since defendants had no notice of plaintiff's new claims, which were never mentioned in the pleadings or at depositions (*see e.g. Farris v Dupret*, 138 AD3d 565, 566 [1st Dept 2016], *lv denied* 27 NY3d 912 [2016]). Plaintiff's new theory of malpractice is not related to the claims in the pleadings. Rather, plaintiff's theory of malpractice in the complaint and bill of particulars is directed only to the surgical procedure performed by Dr. Behrman and lack of informed consent. There was no mention of any presurgical consultation with an immunologist which Dr. Behrman failed to have. Nor did plaintiff question Dr. Behrman at his deposition regarding his treatment of her and planning for the surgery concerning her underlying primary immune deficiency condition. The isolated entry of "Primary Immune Deficiency" made in the voluminous pages of medical records did not place defendants on notice that they would be defending against any claim based on this condition. The dissent also overlooks that permitting the cross motion would prejudice the defendants, who expended large sums of money defending the action as pleaded, and planning their defense accordingly. Nor does the dissent explain how we could ignore the well settled law of this Department on this issue.

Contrary to the dissent's claim, the fact that a trial date had not been set for this matter does not mean that granting the cross motion would not significantly prejudice defendants. From the inception of the case through the summary judgment motion plaintiff never proceeded on her new immune deficiency theory, and thus all of defendants' efforts in discovery and motion practice did not consider this theory. To allow plaintiff a chance to start over at this late stage of the action, and in response to a summary judgment motion, would be highly prejudicial. Further, plaintiff failed to oppose the merits of defendants' prima facie showing on their summary judgment motion, requiring the granting of the motion, and the denial of plaintiff's cross motion.

Although this Court may search the record to find an issue of fact to preclude summary judgment, we cannot search the record to support a new theory of recovery that was never remotely put forth by the plaintiff. Thus, contrary to the dis-

sent's position, the fact that plaintiff's primary immune deficiency is generally mentioned in her medical records does not permit her to raise this completely new theory—that Dr. Behrman should have consulted with an immunologist—for the first time in opposition to a summary judgment motion. While the merits of plaintiff's new theory of recovery should not be considered under these circumstances (*see Keilany B. v City of New York*, 122 AD3d 424, 425 [1st Dept 2014]), we also find the proposed amendment lacks merit (*see Katechis v Our Lady of Mercy Med. Ctr.*, 36 AD3d 514, 516-517 [1st Dept 2007]), since the theory based on primary immune deficiency is speculative and without record support. Plaintiff's expert did not explain how presurgical testing would have changed the result, and advanced only conclusory opinions that a specific infection, which occurred during her jaw surgery, was somehow the cause of her hearing loss, neurological facial sensory deficits, and teeth misalignment (*see Foster-Sturrup v Long*, 95 AD3d 726, 727-728 [1st Dept 2012]; *Roques v Noble*, 73 AD3d 204, 207 [1st Dept 2010]).

Further, the claim that defendant Behrman should have referred plaintiff to an ENT after surgery is belied by the record evidence showing that plaintiff was so referred. The expert's opinion that risks related to primary immune deficiency should have been disclosed is similarly deficient, and unsupported by any opinion that a reasonable person so informed would not have undergone the procedure (*see* Public Health Law § 2805-d [3]). Concur—Tom, J.P., Andrias and Kahn, JJ.

Moskowitz, J., dissents in a memorandum as follows: I agree with the majority that plaintiff failed to address defendants' prima facie showing that there was no departure from good and accepted medical practice. I also agree with the majority that the IAS court should have granted the branch of defendants' motion that sought to dismiss the informed consent cause of action. I disagree with the majority, however, on the issues of whether the IAS court properly granted plaintiff's motion to amend the bill of particulars and denied defendants' motion for summary judgment on the medical malpractice claim. Accordingly, because I agree with the IAS court's decision in that regard, I respectfully dissent.

As the majority notes, defendants met their prima facie burden with plaintiff's medical records, and the opinions of Dr. Behrman and two experts, who addressed all theories of negligence alleged in the bill of particulars. In opposition, plaintiff failed to address defendants' prima facie showing that

the result from the double jaw surgery was anything but a reasonable result.

In general, a plaintiff cannot defeat a summary judgment motion by asserting a new theory of liability for the first time in opposition papers (*see Abalola v Flower Hosp.*, 44 AD3d 522, 522 [1st Dept 2007]). However, plaintiff cross-moved for leave to amend the bill of particulars to encompass this additional theory of departure and causation, and the IAS court properly granted the motion, accurately noting that the allegations of malpractice in the expert affidavit fell within the scope of plaintiff's original allegations. Indeed, defendants had notice in their own records of plaintiff's condition, even though no deposition testimony referred to that condition (*cf. Farris v Dupret*, 138 AD3d 565, 566 [1st Dept 2016], *lv denied* 27 NY3d 912 [2016]).

Furthermore, although plaintiff filed a note of issue, the IAS court had not yet set a date for trial. As a result, I do not believe that there would be significant prejudice to defendants as a result of the delay in amending the bill of particulars (*see Cherebin v Empress Ambulance Serv., Inc.*, 43 AD3d 364, 365 [1st Dept 2007]; *see also Lara v New York City Health & Hosps. Corp.*, 2000 NY Slip Op 50887[U] [Sup Ct, NY County, Sept. 26, 2000], *affd* 305 AD2d 106 [1st Dept 2003] [*Frye* hearing held where new theory was introduced during opening statements to the jury]). Of course, were we to permit plaintiff to amend her bill of particulars, as I believe we should, defendants would be allowed further reasonable discovery on the new theory of liability (*see Cherebin*, 43 AD3d at 365; *see also Abdelnabi v New York City Tr. Auth.*, 273 AD2d 114, 115 [1st Dept 2000]). So that further discovery could proceed, I would also strike the note of issue.

Contrary to the majority's assertion otherwise, there is nothing unduly speculative about the affidavit of plaintiff's expert otolaryngologist. The expert noted that plaintiff's medical chart clearly called attention to her primary immune deficiency, and that the condition would make plaintiff susceptible to perioperative infection, especially with surgery involving hardware and the oral cavity.

Thus, the expert concluded, it was a departure for Dr. Behrman to have failed to account for plaintiff's condition in the surgical planning and to discuss the surgery with plaintiff's immunologist. The expert further opined that plaintiff's infection resulted directly from Dr. Behrman's failure to incorporate plaintiff's suppressed immune condition into his surgical planning. Specifically, the expert noted that the infection had likely

spread to the mastoid cavity and inner ear, and that acute infection and inflammation is known to adversely affect the inner ear. Thus, the expert concluded, the infection had caused sensory deficit. Similarly, the expert noted that the infection and associated inflammation caused direct injury to neurologic anatomy, thus causing the numbness of plaintiff's lip, chin, and lower facial area. The expert therefore drew a direct causal connection between the infection and plaintiff's injuries. These assertions by plaintiff's expert are sufficient, at this stage of the litigation, to support an amended bill of particulars (*see Carnovali v Sher*, 121 AD3d 552 [1st Dept 2014]; *cf. Katechis v Our Lady of Mercy Med. Ctr.*, 36 AD3d 514, 516 [1st Dept 2007]).